# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| MARGARET LINTON et al., | * |
| Plaintiffs | * |
| v. | * CIVIL NO. JKB-10-1457 |
| JASON ANDREW EVANS, M.D., et al. | * |
| Defendants | * |

## MEMORANDUM

Plaintiff Margaret Linton brought this case alleging medical negligence against Jason Evans, M.D., Melody Pairo, who is a nurse practitioner, Eastern Shore OB/GYN, P.A., and Delmarva Internal & Family Medicine, P.A. (Compl., ECF No. 1.)[1] The essence of her complaint is that Defendants failed to diagnose her breast cancer in a timely fashion. Defendants have moved for summary judgment on the ground that the lawsuit was not filed within the statute of limitations. (ECF No. 29.) The motion will be granted.

## *I. Background*

Linton alleged that she reported on August 2, 2005, to Pario that she had noticed a lump under her right arm for two days. (Compl. ¶ 10.) Pario advised Linton the lump was most likely a sweat gland. (*Id.*) A mammogram was ordered and reported as negative. (*Id.*) Linton alleged she continued to make complaints about the lump to Pario and Evans from August 2005 to March 2007. (*Id.* ¶ 11.) Finally, on March 1, 2007, Pario palpated an eight centimeter mass in

---

[1] Also named as a plaintiff was Larry Christopher Linton, the husband of Margaret Linton. The two pressed a claim of loss of consortium in count two of the complaint. Margaret Linton has informed the Court that she is withdrawing her claim in count two. (Pl.'s Opp. Supp. Mem. 6, ECF No. 32.) Although this leaves Mr. Linton as the sole plaintiff in count two, this inconsistency is of no moment because of the disposition of the case.

Linton's right axilla. (*Id.* ¶ 12.) Linton alleges that she underwent surgery for the mass on May 8, 2007. (*Id.* ¶ 13.) The surgery revealed that eighteen of the twenty nodes removed tested positive for cancer, a finding of which she was informed several days later. (*Id.*) Linton filed her claim with Maryland's Health Care Alternative Dispute Resolution Office ("HCADRO") on May 7, 2010. (Pl.'s Opp. ¶ 2, ECF No. 32.) Additional facts will be set forth in the analysis that follows.

## II. *Standard for Summary Judgment*

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing predecessor to current Rule 56(a)). The burden is on the moving party to demonstrate the absence of any genuine dispute of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). If sufficient evidence exists for a reasonable jury to render a verdict in favor of the party opposing the motion, then a genuine dispute of material fact is presented and summary judgment should be denied. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, the "mere existence of a scintilla of evidence in support of the plaintiff's position" is insufficient to defeat a defendant's motion for summary judgment. *Id.* at 252. The facts themselves, and the inferences to be drawn from the underlying facts, must be viewed in the light most favorable to the opposing party, *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008), who may not rest upon the mere allegations or denials of his pleading but instead must, by affidavit or other evidentiary showing, set out specific facts showing a genuine dispute for trial, Fed. R. Civ. P. 56(c)(1). Supporting and opposing affidavits are to be made on personal knowledge, contain such facts as would be admissible in evidence, and show affirmatively the competence of the affiant to testify to the matters stated in the affidavit. Rule 56(c)(4).

## III. *Statute of Limitations*

The applicable statute of limitations provides the following:

> An action for damages for an injury arising out of the rendering of or failure to render professional services by a health care provider . . . shall be filed within the earlier of:
> (1) Five years of the time the injury was committed; or
> (2) Three years of the date the injury was discovered.

Md. Code Ann., Cts. & Jud. Proc. § 5-109(a) (LexisNexis 2006). The statute further provides that the filing of a claim with the HCADRO "shall be deemed the filing of an action." Section 5-109(d). "Discovery" in this context is defined as "when the claimant in fact knew or reasonably should have known of the wrong." *Poffenberger v. Risser*, 431 A.2d 677, 680 (Md. 1981); *Jacobs v. Flynn*, 749 A.2d 174, 184 (Md. Ct. Spec. App. 2000).

> [T]he discovery rule contemplates actual knowledge that is express cognition, or awareness implied from "knowledge of circumstances which ought to have put a person of ordinary prudence on inquiry (thus, charging the individual) with notice of all facts which such an investigation would in all probability have disclosed if it had been properly pursued."

*Poffenberger*, 431 A.2d at 681 (citations omitted).

## IV. *Analysis*

Linton argues that her claim was timely filed on May 7, 2010, because she did not learn she had Stage 3C breast cancer until well after her surgery on May 8, 2007. (Pl.'s Opp. Supp. Mem. 5.) She further argues, "The mere discovery of cancer is not a defining event for instituting a lawsuit. . . . It is only when the patient learns that the cancer has gone from more likely curable to probably noncurable that the necessary elements for a lawsuit have accrued." (*Id.*) She cites no authority for this proposition.

Defendants, on the other hand, point out that the lump under her arm was biopsied and the results showing the lump was cancerous were communicated to her on April 11, 2007.

3

(Defs.' Mot. Summ. J. Ex. 1, Linton Dep. 52:1-20; 53:6—54:3, Jan. 6, 2011, ECF No. 29.) Linton understood that the biopsy's results related to the lump she had first noticed in August 2005. (*Id.* 102:3—103:10.) Additionally, Linton underwent an MRI on April 18, 2007, which indicated a mass in her breast. (*Id.* 57:3-12.) That mass was the subject of a biopsy on April 23, 2007. (*Id.* 58:2-16.) She met with her physician, Dr. Walker, on April 25, 2007, to discuss the results of the MRI and the second biopsy. (*Id.* 59:6-13.) She learned in that visit that she had breast cancer. (*Id.* 60:10-13.)

By April 11, 2007, Linton knew that the lump under her right arm was cancer. By April 25, 2007, she knew she had breast cancer. Either of these events satisfied the discovery rule, i.e., she knew or reasonably should have known of the wrong allegedly done to her by the missed diagnosis.[2] Interpreting the discovery rule to require a diagnosis of the specific stage of cancer is an unnecessary embellishment upon Maryland law, and the Court expressly rejects that interpretation. The failure to file suit until May 7, 2010, clearly, and unfortunately, puts her case outside of the three-year statute of limitations.

Linton understandably tries to avoid the draconian effect of the application of the statute of limitations by arguing that she did not manifest an "injury" within the meaning of Section 5-109(a) until she was told, sometime in May 2007, that she had Stage 3C cancer. She relies upon the case of *Edmonds v. Cytology Servs.*, decided by the Maryland Court of Special Appeals, but her argument misconstrues *Edmonds*, which also involved a claim of negligent failure to diagnose cancer. 681 A.2d 546, 547 (Md. Ct. Spec. App. 1996), *aff'd sub nom. Rivera*

---

[2] It is even possible to find an earlier date than April 11, 2007. March 1, 2007, would be the earliest date the Court would consider as a date when Linton was put on notice of a possible missed diagnosis since that was the date Pairo palpated the lump and set in motion the additional procedures culminating in the cancer diagnoses on April 11 and April 25, 2007. However, it is unnecessary to decide whether an earlier date would apply here since the latter dates are still more than three years before the date when Linton's suit was filed.

*v. Edmonds*, 699 A.2d 1194 (Md. 1997). In *Edmonds*, the court was faced with the proper interpretation of "injury" in Section 5-109(a)(1), which sets forth the five-year limitations period measured from "the time the injury was committed." Edmonds did not display symptoms of cancer for several years after medical providers allegedly failed to diagnose her cervical cancer. The court held that an injury within the ambit of subsection (a) is not "committed" unless the patient sustains damages as a proximate result of the wrongful act. 681 A.2d at 560.

Thus, the court set forth a nonexclusive test for determining the time of commission of an injury:

> [T]he patient could suffer an "injury as a result of a negligent misdiagnosis, when (1) he or she experiences pain or other manifestation of an injury; (2) the disease advances beyond the point where it was at the time of the misdiagnosis and to a point where (a) it can no longer effectively be treated, (b) it cannot be treated as well or as completely as it could have been at the time of the misdiagnosis, or (c) the treatment would entail expense or detrimental side effects that would not likely have occurred had treatment commenced at the earlier time; or (3) the patient dies.

*Id.* at 564. Additionally, the *Edmonds* opinion emphasized that the five-year period in Section 5-109(a)(1) "begins to run when injury (or 'damages') ***first*** arises, and not when ***all*** damages resulting from the physician's negligence have arisen. . . .[A]ll that is required for an injury to exist 'is that the negligent act be coupled with *some* harm.'" 681 A.2d at 564. It is reasonable to assume that "injury" means the same whether it is the five-year period or the three-year period that applies, but Linton does not contest that it is the three-year period that is pertinent to her case.

To the extent that the *Edmonds* opinion has precedential value for this case, it clearly does not turn on when the patient learned the specific stage of her cancer, and it would be a mistake to read into that case such an interpretation. Rather, the case was determined to warrant further fact-finding in order to measure when the patient first sustained "injury." Applying the

5

*Edmonds* standard to this case does not afford Linton relief. It can reasonably be said that injury or damage first arose when she was diagnosed with cancer in April 2007 because that was "*some* harm." If she had a valid case of negligence, her diagnosis was evidence of compensable harm. The later-acquired information of the stage of her cancer was mere confirmation of the advanced stage of her disease. But Linton was previously put on notice that something was wrong, and it is that earlier date that controls.

The Court realizes the harshness of this result. Statutes of limitations provide artificial dividing lines between viable cases and nonviable cases. That Linton's case falls on the nonviable side of this line is not a conclusion reached blithely.

## *V. Conclusion*

The instant case was not filed within the applicable limitations period. Accordingly, summary judgment for Defendants will be entered by separate order.

DATED this 11th day of May, 2011.

BY THE COURT:

/s/
James K. Bredar
United States District Judge